Court is taking up case number 4251034, Susan Conant v. MemberSelect Insurance Company doing business as AAA Insurance. Counsel for the Appellant, if you'll please state your name for the record. Nicholas Iberoni, I-A-B-A-R-O-N-E. Thank you, Counsel. And Counsel for the Appellant. Daniel Lutz, L-O-U-Z-S. Thank you, Counsel. Counsel for the Appellant, you may proceed with your argument. If it may please the Court, Counsel, we're here today over a dismissal, erroneous dismissal, for claim for breach of contract and violation of the Illinois Insurance Code. And it stems from the trial court misinterpreting or misapplying the law and taking decisions that belong to the trier of that. And I want to say from the beginning, we're not and we never have disputed that insurance contracts or any other contract can have a limitations period that's shorter than the statute of limitations codified by the General Assembly. And in contracts like this with the one year limitation, and it can come into play many ways. People can, there can be a dispute over what is the replacement cost. There can be a dispute over whether there was prior damage, so the amount of the, that's going to be paid is less. The type of materials being used. And it can even go on to other things besides hail damage, whether fire, whether there was, you know, did they have the fire alarms and the smoke detectors hooked up. Was the damage caused or partially by the insured's own failure to mitigate damages. So there's any multitude of issues that can arise over an interpretation of a contract. An interpretation of the extent of coverage and the proper determination of what may be replacement value of a premises. Here, however, what we're talking about is something completely different. The allegation here is that the defendant breached the contract. And it breached the contract prior to the one year limitation by denying, despite the fact that the plaintiff's roofer, the agent of the, who came out to inspect the replacement and the photographs and everything that was submitted. The two reports from the agent, the contract retained by plaintiff saying, you know, this is, look at the damage and some of the, two of the photographs are in the complaint. And the law in Illinois is pretty clear. When this contract, if the contract was breached, it's up to the trier of fact to determine when it was breached. And if the trier of fact concludes that that contract was breached either with the first or second denial, both of which happened within the one year period at issue, then the contract ceases to exist. And the law in Illinois is quite clear that when a subsequent obligation, which here would be subsequent to the breach, imposed by the contract on the non-breaching party is no longer an obligation and it cannot be resuscitated. So that's the first issue that a jury must determine. When was this contract breached? Was it breached prior to the expiration of the one year limitations period? Assuming arguendo that the jury would find, well, it was really breached later when the second report came up. Then the question is waiver and estoppel. And, you know, the Illinois Supreme Court has said that, you know, contrary to what the trial judge ruled where the letter has to state that they're waiving the one year, the court has been really clear in stating that, you know, it's acts, words, conduct, or knowledge of the insured. And it's a unilateral act. And there's no prejudicial reliance required. And that's up again to the trier of fact to determine when the insurance company being threatened with suit, which the plaintiff says would be held in abeyance if they reevaluate the claim, reinspect the property, which they agree to do before the expiration of the one year period. And as the complaint alleges, the plaintiff had everything in place ready to file suit, but then said, okay, let's see what the second report shows. And as the defendant admitted in the October 29th letter, they were re-reviewing the claim. So the only reason an insurance, if they waited after the letter, if they waited four days or three days and never responded, and the plaintiff didn't file suit, then the case is barred. Counsel, is it your position then that that letter is what triggered the waiver? Which letter? The one? My letter? Yes. I think two. Well, let me ask it this way. What is your position on what triggered the waiver in this case? The phone call by my client first to say that, you know, she wanted a re-inspection, she wanted the claim reviewed, which was then followed up by my letter that said, you know, the insured wants a re-inspection and is ready to file suit, but will wait until a re-inspection. Counsel, just for clarity, is the letter that you're referencing there, the June 24th, 2024 letter? Yes. You stated this letter was attached to Plaintiff's Complainant's Exhibit D, but based on my review of that, it appears that that's the October letter. Is the June letter in the record anywhere? I thought it was. I can get it up on my computer. Okay. I may have you address that in rebuttal, then, if you can check to see if it's actually in our record. I don't. I thought it was. We've all been working under the assumption it was in there. Okay. And then on June 27th, I just want to be clear, the record includes an email from the plaintiff to Ocean Levine on June 26th, which requested a re-inspection of a roof. Then on June 27th, defendant notified plaintiff it would re-inspect the roof. Is that correct? And that was directly to Plaintiff? To Plaintiff. And we have the email in the record that says that. Then on June 28th, they ordered the re-inspection, and the time limit would have run on the 29th. So all of this occurred before... Other than stating they would re-inspect, did they promise her anything else? No. She also wanted it was re-inspection, review the claim, you know, because there is damage to the roof. That's all she wanted, was a re-inspection. And going back to the question of waiver, I just want to confirm, you're arguing an implied waiver, not an express waiver? Correct. By their actions... I mean, it's a question for the jury to determine. And when we go back to October 29th, they admit they're reviewing the claim in that email. They said, we are reviewing the claim. We'll get back to you in 30 days. So a jury can find that all parties after June 27th were under the impression that this provision was being waived. There would be no reason for an insurance company to go through the expense and time of re-inspecting a roof if they were going to stand on that principle. Why else would you do it? It makes no sense. Did they ever advise you or the client directly that they were vacating the prior denial of the claim? No. What they did later, after the second inspection, when the second roofer comes out and says, second inspector comes out and says, I can't believe, was hired by the company, I can't believe that this was denied. So we figured, well, we're going to get... But you never actually, you or your client didn't receive anything that said they were vacating the first denial? No. All we did was receive the thing that they were standing on, the denial. And the critical point here is they say there was no damage. Their two agents, both inspectors of theirs, said that there was hail damage, there was a flood in the complaint, and the roof needed to be repaired. Her roofer sent 28 photographs, and we have two of them in there, where they're circled where the hail damage is. It would have been one thing for them to say, the roof, partial roof needs to be fixed, or there was prior hail damage, but looking at that and then saying in the final report that there was no hail damage whatsoever, to us, it's bad faith. But all of these questions about what happened is something for the prior effect to determine, as to whether or not there was a waiver. That goes hand-in-hand, of course, with estoppel. The difference being that, unlike waiver, there has to be justifiable compliance. So what we have is the plaintiff saying, okay, I want to go ahead with the lawsuit, demands a re-inspection. The letter comes in saying, you know, we want the re-inspection, and we'll forbear from going forward until we hear from the re-inspection. They order the re-inspection. On those facts, a jury could certainly find there's estoppel, because why would you, you know, to say, yes, we're going to give you a re-inspection, we're going to look at it, and there's reasonable reliance there. Jury can easily find reliance. Whether they do or not, it's a fact question. But for the trial court to come in and say you cannot have estoppel when you have a written contract is just contrary to black-lettered Illinois law. Do you agree, though, that even though the trial court argue, I know, assuming that that's an erroneous statement, okay, so I'll accept that for this premise, for the sake of argument, but the trial court's reasoning, even if we say it was flawed, this court reviews the trial court's judgment and not its reasoning, correct? We have a DeNovo review. The question is, did the judge first of all make a, what's the law? Was it properly applied, and was there a fact question that should not have been decided? But we apply a DeNovo standard. Yes. Yes. And, you know, I know the trial judge in the United States right now says, well, what you should do, even though they said they're going to do that, and we have, in our brief, we have an advocate case that's won by this court, that you should have filed suit. You know, you look at this, it's going to cost somebody over $600, almost $700 in court costs, subpoenas, and service, plus attorney's fees. So you have a loss that's maybe $20,000. You have a $2,000 deductible, and then somebody's supposed to spend, when the insurance company says, hey, we're going to re-look at this, we're going to re-examine it, okay, is supposed to spend another $2,000, which would not be compensated if she had filed suit, and they had said, you're right, that $2,000 is burned. There's a case before a court that doesn't need to be there. And then when you're doing that, in this case, there's a substantial amount of damage. But what happens if it's a $5,000 loss? If somebody's going to spend $2,000 after an insurance company says, we're going to re-look at this, okay, and say, you're going to file suit, now we'll re-look at it. Is somebody going to spend $2,000 when their loss is $5,000? It's just not economical and leads to mischief. I think here, our position is clear. There's three factual questions that have to be decided, and the only proper entity to decide that is the jury that's been demanded in this case. Other than the indication that they would re-inspect the roof, did they ask for any additional information about the claim from the plaintiff after the June 29th date? No. They came out, looked at the roof, and then we got this wrong report that said there was no damage. Even though the inspector who was there, take the facts and the complaints, said the roof should be replaced. Both inspectors of theirs said the roof should be replaced. And if we get that testimony, I cannot think of anything that says bad faith more than the fact that you deny coverage when both inspectors say the roof should be replaced. And we did ask them for a litigation hold. We were serious about this and took their word for it, which was a mistake on our part. And all during this time, remember, from the 29th through the next six months, and all the correspondents, never once did they raise this limitation. This limitation was only raised after the lawsuit was filed and a motion to defense. But never did they ever say, you know, hey, you guys, you blew it. Now, if there's a one year, never mentioned. Thank you. Thank you. We have time for rebuttal. Counsel, you may proceed with your argument. Good afternoon, Your Honors. Counsel, you may please the court. This appeal stems from a first party property insurance claim. Appellant submitted a claim for wind and hail damage to her insured property. The damage was alleged to have occurred on June 29th, 2023. The insurance policy between appellant and appellee contains a one year statute of limitation provision that starts to run from the date of loss. So appellant's deadline to file suit for this claim, pursuant to that one year statute of limitation provision, would have been June 29th, 2024. After the claim was filed on August 23rd, 2023, well in advance of that one year deadline, appellee denied the claim and sent the appellant a letter in which it stated, this is your deadline to file suit. That's a requirement of insurance companies by Illinois statute that they need to notify the insurer of the deadline to file suit, which the appellant did here. Despite being notified of the deadline to file suit, appellant did not file suit until April 21st, 2025, nine months and 23 days after the one year statute of limitation ran. The trial court dismissed with prejudice on the basis that the complaint was time barred. Now on this appeal, our position is there's two questions before this court. Whether the one year statute of limitation provision within the policy applies and whether appellee waived that provision or is stopped from asserting that provision. For the first question, it's easy to answer. Clemson regularly upheld the validity of statute of limitation provisions within insurance policies, even in response to breach of contract claims filed against them. Kramer is the seminal case from the Illinois Supreme Court on that issue. There are many other cases from this district and other appellate districts saying an insurance company can rely on a statute of limitation provision within their policy that sets a shorter time frame for filing suit than the typical breach of contract statute of limitation provision. I am not aware of any case at all that says because an insured files a breach of contract claim, the insurance company is now prevented from relying on a statute of limitation provision or any other provisions within the insurance policy. I think holding such a requirement would upend all insurance law in Illinois because insurance companies regularly rely on provisions within a policy in response to breach of contract claims, such as exclusions, limitations. The policy is what it is and courts regularly upheld statute of limitation provisions. For the second question, the trial court properly found that the appellate did not waive the statute of limitation provision or should be stopped from serving the provision as a matter of law. In the insurance complex context, to establish either waiver or estoppel, the insured must demonstrate that they were lulled into a false sense of security by the insurance company and that is the result of them not filing suit. Let's pause there just for a moment. I guess my question is what other explanation could there be after the June 29, 2024 communication, if you will? Why keep communicating unless there's... What's this other intention or purpose if it wasn't to waive that time period? Insurance companies have a duty to investigate claims. If an insured comes to them and says, I know you denied this previously, but I have additional evidence, whether it's photographs, eyewitness testimony, a contractor's estimate, you need to go back and look at your prior decision based off this new evidence, the insurance company has to consider that evidence. So the appellee here has consistently maintained its denial. It's never said, we're going to pull back our denial. It's never said, we're going to issue payment. It's never said, we're going to not rely on the statute of limitations provision or any other provision in the policy. Did any of those actions of the, I'll say, re-inspecting of the roof, toll that limitation period? No, I would say it did not. And that is a specific decision this court had reached previously in the case of FALA where post-denial offers to re-investigate, re-inspect, do not toll or reset the statute of limitations provision. And in that case, this court has a specific clause that, neither plaintiff nor any other insured should rely on an insurance company's agreement to re-investigate a claim as if it were an agreement to vacate the denial and start from scratch. In order to preserve the rights under the policy, the insured should file suit against the insurance company within one year of the original denial, even if prior to receipt of the company's report of the results of its investigation. This case is directly in line with FALA. They never pulled back their denial of the claim. They never made any payment. The insured came to them and said, we have additional information. So they agreed to re-investigate. And then following that re-investigation, affirmed the prior denial. If the appellant wanted to protect the rights here, they should have filed suit or filed a proof of loss, which would have automatically told the statute of limitation provision under the policy. The further to finally file suit was solely the result of the appellant's inaction and nothing the appellee did to lull them into a false sense of security. How do you respond to opposing counsel's argument that there's excessive cost to filing that suit if it's not necessary? I would respond by saying that's exactly what the proof of loss called exception within the statute of limitations provision is created for. If they had filed the proof of loss on June 28th, the day before the statute of limitations ran, they would have been told until the insurance company responded to the proof of loss, which the insurance company likely needed the re-investigation to be able to respond to it. But they didn't file a proof of loss. It's also very common insurance claims to enter into tolling agreements with the insurance company, which didn't occur here either. Is there any action on the part of the insurance company short of a tolling agreement or some kind of correspondence with the plaintiff saying we're not going to enforce the filing deadline that would cause a waiver of that limitation? I think there can certainly be an implied waiver. When an implied waiver has been found, it's typically in the context of the insurance company saying, we'll undo our prior denial, we're reopening the claim, we'll make a partial payment, let's engage in settlement negotiations. None of that occurred here, and that's exactly why the following says, re-investigation of a claim does not rise to the level of waiver or estoppel. So you need that and something more. Correct. Some sort of action on the part of insurance companies to suggest they're not going to enforce the statute of limitations permission. And I understand this court is reviewing the ruling and not the reasoning of the trial court. I believe that's what the trial court was getting at, not that an express waiver is required, but that there was under pursuant to VAWA, nothing by the insurance company explicitly saying, we're undoing our prior denial, we're acting as if this claim is reset to day one, well, let's restart everything. They never did that. They consistently maintained their denial. Also with regards to the trial court statements, do you concede that any of those are erroneous statements of law? I would concede that estoppel is not available because there's a contract in place. I understand estoppel and waiver are two different principles. I think in an insurance context, they ultimately end up having the same standard being required, which is, I would say, summarized by, was the insurance rolled into a false sense of security by the insurance company such that they did not file suit? And I believe the case law would support that a trial court can decide as a matter of law whether there's enough evidence of that rolling to say it has to go to the trial or, in fact, whether waiver or estoppel applies. There was no evidence here. Everything that the appellant points to was actions taken by the appellant that resulted in them not protecting their rights. The appellate consistently maintained their coverage position, and never once set up a reversing arch of denial. And under the requirements of the Constitution of Illinois statute, they properly notified the appellate of the one-year deadline well in advance of it occurring. I have nothing further, to be honest, except if there's any further questions that you have to answer. Seeing none, thank you, counsel. Thank you. Regarding, first of all, proof of loss. Well, first of all, proof of loss is relevant to the issue of liability because in Illinois we have a measure versus the county mutual that when you deny something on one ground, you can't later say, oh, by the way, there's a proof of loss, so we're going to use that one since the other ground didn't hold water. I would also submit to the court that there was nothing more to give them. The initial roofer sent them 32 photographs and a detailed report back in May. When that was denied, he then wrote the email that's in the record that said, you know, I've dealt with your inspector before, Mr. Soros. He's an honest guy. He's always told the truth. He said this roof needs to be replaced. You folks, this is bad faith on your part because look at the photographs. Look at everything. To say that we needed to, there's nothing more we could give them. There's no new evidence. We gave them photographs of the roof. We gave them what our roofer said. We told them what their roofer said. They were angry that their inspector talked to us. Then the second fellow comes out and says, hey, this should have been, I can't believe they, as we alleged, I can't believe they denied this. This roof needs to be replaced. So that's, the other point is, you know, the jury, when they're looking at this, can also look at what happened before and what happened after. So before the 29th, they're going to order an inspection. There's no new evidence. Nothing new came to them. They're going to order it under threat. If you don't have the inspection, we're going to file suit. So they decide not to wait the four days. That's all they had to do. Then there would have been a suit or they would have been in the clear. Instead, later, they write that email on the 29th that said they're reviewing the claim. Why does an insurance company order an inspection and say they're reviewing the claim if the purpose was not to waive that? That's a jury question. And the jury can look at the October 29th admission that they're reviewing the claim as part of the intent of what happened in June. So that's part of that. Second of all, this is not a case where it's going to upturn any law by saying that if there's a breach of contract here, that this doesn't apply. All of the things that are talked about relating to coverage of the contract, relating to terms of the contract, expenses, are all things that reasonable people can disagree on. And if that's the case, you better live with that. This is one in which they're denying reality. This is one in which they're saying, despite the physical evidence, despite their own inspectors, there is no damage. That is an egregious breach of contract. To then do that after you willfully breach the contract and then say, we're going to rely now on something in that contract once that contract is no longer in existence. All the other examples do not rise to breach of contract. There's a reasonable difference between the parties. That's not a breach of contract if you're saying, I think it costs more, or I think these are the materials that should be used, or I think you're wrong as to wear and tear. Those are all disagreements. This is a willful breach of contract. They denied it. As the willful said, this person that's in charge denies everything. So it's really an egregious case. I cannot think of any other reason, and maybe a jury could find another reason. Maybe AA could argue to the jury that there was some other intent in ordering the re-inspection and re-reviewing the claim if it wasn't a waiver of the policy. I rack my brains. I cannot come up with any explanation. Thank you. Thank you. Court will take this case under advisement. We will be in recess.